UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLIFFORD PEARSON,** *et al.,*<br><br>*Plaintiffs,*<br><br>v.<br><br>**SUNNOVA ENERGY INTERNATIONAL,** *et al.,*<br>*Defendants.* | Case No. 1:25-cv-00251-RCL |

## MEMORANDUM OPINION

This dispute arises from a contract signed by plaintiff Clifford Pearson and co-defendant Sunnova Energy International ("Sunnova"), under the terms of which Sunnova agreed to install solar panels on the roof of Mr. Pearson's Washington, D.C. home. Before the Court is Sunnova's Motion [ECF No. 3] to Compel Arbitration and Dismiss. Sunnova claims that Mr. Pearson is bound by an arbitration clause in the contract he signed with them to install solar roofing, and it asks that this Court stay Mr. Pearson's claim against Sunnova pending resolution of the arbitration proceeding. Sunnova further argues that the claims of plaintiff Imani Pearson—the wife of Mr. Pearson—must be dismissed from the suit because Mrs. Pearson was not a signatory to the contract. For the reasons that follow, the Court will grant the Motion in full and order that Clifford Pearson's claims be submitted to arbitration.

### I. BACKGROUND

On October 26, 2022, Clifford Pearson signed a Consolidated Agreement with Sunnova for their "Sunnova Solar Service," which set out terms for the installment of a solar panel system in Mr. Pearson's Washington, D.C. home. Ex. B-03 at 1, Notice of Removal, ECF No. 1–6 ("Consolidated Agreement"). The Consolidated Agreement includes a provision by which Mr.

1

Pearson and Sunnova agreed that co-defendant Sustainable Energy Systems ("Sustainable") would design and install the solar panel system under a "Home Improvement Plan." *Id.* at 4–15. Mr. Pearson also entered into a "Loan and Security Agreement," *id.* at 18–31, and a "DC Warranty Agreement," *id.* at 33–42, with Sunnova. Mr. Pearson signed four separate arbitration clauses contained in the Consolidated Agreement. First, under "Agreement and Installation Details" with Sunnova, Consolidated Agreement at 3; second, under the Home Improvement Plan with subcontractor Sustainable, *id.* at 11–13; third, under the Loan and Security Agreement with Sunnova, *id.* at 28–30; and fourth, under the DC Warranty Agreement with Sunnova, *id.* at 39–40.

Mrs. Imani Pearson, the wife of Clifford Pearson, did not sign the Consolidated Agreement, and thus necessarily did not sign the pages containing these arbitration clauses. However, she claims that co-defendants Oronde Wright and Greg Floyd of Pure Solar Systems ("The Sales Defendants") solicited her in the process that culminated in the signing of the Consolidated Agreement by her husband and Sunnova.[1] As part of their solicitation, the Sales Defendants promised Mrs. Pearson a $1,160 "referral fee," which they would pay to Mrs. Pearson after installation of the solar panels. Ex. B-22 at 1, Notice of Removal, ECF No. 1-25.

Immediately following the installation of the solar panels on June 28, 2023, water began to intrude through the roof of the Pearsons' home. Ex. A at 2, Notice of Removal, ECF No. 1-2 ("Compl."). The plaintiffs claim that the leaks were caused by Sunnova's faulty installation of the panels. *Id.* They also claim that the Sales Defendants did not pay the $1,160 referral fee due to Mrs. Pearson ten days after installation. *Id.* On August 20, 2024, the Pearsons filed a form complaint, Ex. B-01, Notice of Removal, ECF No. 1-4 ("Form Compl."), and on August 25, 2024,

---

[1] The plaintiffs allege that the solicitation took place on November 5, 2022, even though the Consolidated Agreement was signed several weeks earlier in October 2022. Pl.'s Compl., Ex. A to Notice of Removal at 1–2, ECF No. 1-2. This discrepancy in the timeline is not relevant at this stage in the proceedings.

they filed a separate narrative complaint "seeking full monetary recovery for unpaid damages in the amount of $105,000" for their breach of contract claims against the defendants. Compl. at 1. On September 12, 2024, Mr. Pearson sent a copy of the summons and complaint via U.S. Postal Service certified mail to co-defendants Sunnova, Sustainable, Gregory Floyd, Oronde Wright, Zayn Bradley, and Pure Solar Systems. *See* Service, Doc. 4 of Super. Ct. Docs. at 111–35, ECF No. 4-4. Mr. Pearson received a return receipt only from Sunnova. *Id.* at 115.

On January 28, 2025, Sunnova removed the case to this Court and subsequently filed the instant Motion. Mot. to Compel, ECF No. 3 ("Mot."). The plaintiffs have filed both a Response to the Motion to Dismiss Mrs. Pearson's claims, Resp., ECF No. 6, and a Motion to Show Cause to Compel Arbitration, Mot. to Show Cause, ECF No. 7. The Court will construe these pleadings liberally and consider them as one combined Opposition to the Motion. *See Abdelfattah v. DHS*, 787 F.3d 524, 533 (D.C. Cir. 2015); *Atchison v. U.S. Dist. Cts.*, 190 F. Supp. 3d 78, 86 n.10 (D.D.C. 2016). Sunnova has filed a Reply, ECF. No. 8, and the Motion is therefore ripe for this Court's review.

## II.  LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(2) and Rule 4

"'Federal courts lack the power to assert personal jurisdiction over a defendant unless the procedural requirements of effective service of process are satisfied.'" *Skewes-Cox v. Georgetown Univ. L. Ctr.*, No. 24-5065, 2025 WL 1099211, at *2 (D.C. Cir. Apr. 14, 2025) (quoting *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012)). Thus, a court must dismiss the claims against parties for whom service was ineffective. *See id.* "The plaintiff bears the burden of demonstrating that [the] requirements [of service] were met." *Id.*

Federal Rule of Civil Procedure 4 allows a plaintiff to serve individuals and corporations within a judicial district of the United States by "following state law for serving a summons . . . in the state where the district court is located." Fed. R. Civ. P. 4(e)(1), (h)(1)(A). D.C. law allows a plaintiff to effectuate service sending a copy of the summons, complaint, and initial order to an individual or corporation by registered or certified mail. D.C. Super. Ct. R. Civ. P. 4(c)(4). When serving a corporation, all required materials must be sent or delivered to an officer or agent of the corporation. *Id.* 4(c)(1). Service by registered or certified mail must be returned with a signed receipt from the individual or appropriate agent of a corporation, affixed with an affidavit stating the pertinent information regarding the case.[2] *Id.*

### B. Motion to Compel Arbitration

A court reviewing a motion to compel arbitration proceeds through two steps. First, the court must determine whether a valid arbitration clause exists. The party seeking to compel arbitration bears the initial responsibility of showing that a valid agreement to arbitrate was made. *Sakyi v. Estee Lauder Cos., Inc.*, 308 F. Supp. 3d 366, 375 (D.D.C. 2018) (Howell, C.J.). To determine whether there was a valid agreement to arbitrate between the parties, this Court uses ordinary contract principles[3]—such as consideration, mutual assent, and any affirmative defenses one may raise—under the law of the governing state. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 940, 1922 (1995); *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021) ("Because

---

[2] The affidavit "must specifically state: (i) the caption and number of the case; (ii) the name and address of the person who posted the registered or certified letter [and]; (iii) the fact that the letter contained the summons, complaint, Initial Order, any addendum to that order, and any other order directed by the court to the parties at the time of filing." D.C. Super. Ct. R. Civ. P. 4. (l)(1)(B).

[3] Because this case is brought to this Court under diversity jurisdiction, it is governed by state law. *Beltway Mgmt. Co. v. Lexington-Landmark Ins. Co.*, 746 F. Supp. 1145, 1148 (D.D.C. 1990). The contract in question stipulates that the governing law of any dispute arising from the contract is the state law of the home that was provided solar panels, and the home in question is in D.C. *See* Consolidated Agreement at 10, 25, 41. So this Court will apply D.C. law to the question of whether the parties entered into a valid arbitration agreement.

4

arbitration is a contractual matter, we must first determine whether the parties have agreed to arbitrate by looking to state contract law.").

Once the arbitration clause is deemed valid, the Federal Arbitration Act ("FAA") "creates a strong presumption in favor of enforcing arbitration agreements." *Taylor v. Fannie Mae*, 839 F. Supp. 2d 259, 260 (D.D.C. 2012). And in determining whether specific issues are subject to arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S 1, 24–25 (1983). "When considering a motion to . . . compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Federal Rule of Civil Procedure 56(c)." *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 137–38 (D.D.C. 2007). "Thus, it is appropriate to grant a motion to [compel arbitration] when the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to [arbitration] as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). Likewise, to avoid arbitration, "[t]he party opposing arbitration must identify a triable issue of fact concerning the existence of the [arbitration] agreement." *Id.* (alteration in original) (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). When determining whether there is a triable issue of fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III. DISCUSSION

### A. The Court Will Dismiss Claims Against Co-Defendants Zayn Bradley, Greg Floyd, Oronde Wright, Pure Solar Systems, and Sustainable Energy Systems for Ineffective Service of ProcessFin

Before ruling on the Motion, the Court will dismiss several defendants for lack of personal jurisdiction. After filing in Superior Court, the Pearsons attempted service by registered or certified mail to all the individuals and corporations listed as co-defendants pursuant to Superior Court Civil Rule 4(c)(4).[4] *See* Notice of Removal Ex. B-30, ECF No. 1-33.. The Pearsons docketed the receipts of the certified mail sent to each defendant and the required affidavits confirming delivery. *Id.* But, as already noted, to prove effective service under D.C. law, "a plaintiff must show that the summons and complaint were delivered to a recipient authorized to accept service of process." *Skewes-Cox*, 2025 WL 1099211, at *2 (citing *Bulin v. Stein*, 668 A.2d 810, 813–14 (D.C. 1995)). And here, none of the affidavits indicate that the summons or complaint were properly received by any co-defendant except for Sunnova. *Id.* Furthermore, no defendant other than Sunnova has responded to any litigation filing, which would be consistent with a lack of proper service. Because the Pearsons have never provided the required proof that the summons and complaint were "delivered to a recipient authorized to accept service of process" for any defendant except Sunnova, the Court does not have personal jurisdiction over any defendant except Sunnova. *See id.* at *2; D.C. Super. Ct. R. Civ. P. 4(c)(4). Consequently, the claims against the other co-defendants must be dismissed.

### B. The Court Will Grant Sunnova's Motion to Dismiss the Claims Of Mrs. Imani Pearson

Generally, a party must be dismissed from a breach of contract suit if they are not a party to the contract. *Colella v. Androus*, 518 F. Supp. 3d 439, 444 (D.D.C. 2021). This "ensures that

---

[4] The Pearsons filed the original case with the D.C. Superior Court, but Sunnova removed it to this District Court.

the parties involved in a lawsuit had an interest in the transaction giving rise to the suit." *Id*. However, a "third party may sue on a contract if the contracting parties intended the third party to benefit." *Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 188 (D.D.C. 2016) (quoting *District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C. 1990)). A non-party to the contract becomes a third-party beneficiary when "the contracting parties had an express or implied intention to benefit directly the party claiming such status." *Silberberg v. Becker*, 191 A.3d 324, 332 (D.C. 2018) (quoting *Fort Lincoln Civic Ass'n, v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008)). To assess such intent, courts first look to whether the party was expressly intended to be a beneficiary by looking at the contract's language for evidence of the party's name. *Id*; *see also Colella*, 518 F. Supp. 3d at 445–46. If there is no such evidence, courts turn to whether the purported intended beneficiary is identifiable from the "circumstances of [the contract's] formation," such as the third party's relationship and interactions with the signatories, or "whether the nonparty clearly stood to benefit from the agreement at issue." *Walker v. Uber Techs., Inc.*, 749 F. Supp. 3d 134, 150 (D.D.C. 2024) (citing *Sakyi*, 308 F. Supp. 3d at 384). However, "'[a]n indirect interest in the performance of the [contractual] undertakings' is insufficient," and a party does not become an intended third-party beneficiary merely because they derived incidental benefits from the contract in question. *Fort Lincoln*, 944 A.2d at 1064. The putative third-party beneficiary has the burden of proving the requisite intent. *Id.* at 1065.

Even construing the limited facts presented by the plaintiffs in a light most favorable to them as the non-moving party, the Pearsons have not met their burden of proving that Mrs. Pearson was an intended third-party beneficiary—and, as a non-signatory, such a designation would be her only avenue for bringing a breach of contract claim. First, the plain language of the consolidated contract indicates that Mrs. Pearson was not a party to the contract. *Williams v. Consumerinfo.com*,

*Inc.*, No. 1:24-CV-02017-RCL, 2024 WL 5186620, at *5, *9 (D.D.C. Dec. 20, 2024) (Lamberth, J.) (ruling on whether there was valid consideration and assent in an arbitration clause by assessing the contract's plain language). Although there were ample opportunities for Mrs. Pearson to be a signatory—for example, since she alleges that she was repeatedly solicited in the sales process, and almost all "Buyer" or "Borrower" signature spaces were accompanied with a separate line for a "Co-Buyer" or "Co-Borrower"—she never signed the agreement. *See, e.g.*, Consolidated Agreement at 6. The contract also clearly defines the parties of the contract as being only its signatories. The Loan and Security Agreement specifies that "'You' and 'your' refer to the Borrower and any Co-Borrower *named above* individually and jointly," *Id*. at 20 (emphasis added). Only Mr. Pearson is listed. Similarly, the DC Warranty Agreement states "'You' and 'your' refer to the Buyer and any Co-Buyer named above, individually and jointly," *id*. at 33, and only Mr. Pearson is named. All descriptions of those bound to the contract point to an exclusion of Mrs. Pearson.

Nor do the circumstances of the contract's formation give rise to an inference that Mrs. Pearson was a third-party beneficiary. Most glaringly, even taking as true the fact that the Sales Defendants solicited Mrs. Pearson, the plaintiffs have given no indication that either the Sales Defendants or their purported employer Pure Solar Systems have any connection to Sunnova. Therefore, the Court has no reason to speculate that Sunnova knew of the Sales Defendants' solicitation of Mrs. Pearson for the solar panel installation. Put simply, the record does not contain a single interaction between Mrs. Pearson and Sunnova. Instead, Sunnova only appears as the signatory to its own form contract with Mr. Pearson. The Court cannot conclude from this paucity of information that Sunnova intended for her to be a beneficiary to the contract between them and

8

Mr. Pearson. Mrs. Pearson has therefore failed to meet her burden of proving that she was an intended third-party beneficiary of the contract, and her claims must be dismissed.

### C. The Signatories Entered Valid Agreements to Arbitrate the Instant Claims, Which the Court Will Enforce.

#### i. *There is a Valid Agreement to Arbitrate Between the Parties*

There are three arbitration clauses within the Consolidated Agreement between the parties.[5] The first arbitration clause governs claims between Mr. Pearson and Sustainable, and Mr. Pearson's signature appears on the bottom of the page. *Id.*[6] The second and third arbitration clauses are between Mr. Pearson and Sunnova. They are found within the Loan and Security Agreement, *id.* at 28–30, and the DC Warranty Agreement, *id.* at 39–40, respectively. These arbitration clauses provide detailed terms and conditions of the arbitration agreements between Mr. Pearson and Sunnova.

As Sunnova is the party seeking to compel arbitration, it must prove that these arbitration clauses were valid, in that each was supported by mutual assent and consideration. *Sakyi*, 308 F. Supp. 3d at 375. Regarding mutual assent, the Court agrees with Sunnova that "Mr. Pearson clearly accepted the proposition" that the parties would resolve disputes through arbitration. Mot. to Compel at 9. Mr. Pearson affixed either his signature or his initials at the bottom of each of the two arbitration agreements with Sunnova. Ex. 4, 31, 41. A representative of Sunnova countersigned the agreement, and Sunnova does not claim that the arbitration clause is

---

[5] There is also a notice of arbitration found on the "Agreement and Installation Details" page that briefly outlines the various rights and duties between Mr. Pearson and Sunnova. Consolidated Agreement at 4. This provision simply puts the plaintiffs on notice that the agreement "require[s] the parties to resolve their disputes by arbitration rather than by lawsuits in court; jury trials and class actions are not permitted." *Id.*

[6] While Sunnova's name and information is present throughout the four corners of the Home Improvement Plan, the arbitration clause explicitly states that the "the words 'we,' 'us' and 'our' mean the Contractor named above and any assignee of this Home Improvement Agreement." Consolidated Agreement at 11. As Sustainable is the contractor named in the Home Improvement Agreement and Sunnova is not an assignee, the second arbitration agreement only binds Mr. Pearson and Sustainable.

unconscionable. *See Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1110–11 (D.C. 2002) ("[O]ne who signs a contract has a duty to read it and is obligated according to its terms."). Regarding consideration, the terms of both the second and third arbitration clauses state "[y]ou and we agree that any dispute, claim or disagreement between you and us (a 'Dispute') shall be resolved exclusively by arbitration." Consolidated Agreement at 28, 39. Thus, as Sunnova correctly asserted, both parties had "mutual rights to elect arbitration" and made "mutual promises to arbitrate upon such election," thereby demonstrating consideration. Mot. to Compel at 9.

Mr. Pearson, in response, does not dispute the validity of the arbitration clauses, and in fact he "agree[s] that arbitration is one clause in the agreement." Mot. to Show Cause at 1. The only defense to enforcement of the arbitration terms the plaintiffs raise is that "the defendant has only honored those clauses in the agreement that delay proper payment." *Id.* The Court construes this as an argument that Sunnova is only enforcing the agreement when it suits them, and so they have somehow waived their right to arbitrate. However, a mere "challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Doucette v. Neutron Holdings, Inc.*, 288 A.3d 339, 343 (D.C. 2023) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

          ii.    *The Parties Agreed to Arbitrate The Arbitrability of the Instant Claims, So The Court Will Stay The Claims And Compel Arbitration*

Once a court determines that there was a valid agreement to arbitrate, generally the court then determines whether the issue in question is within the scope of arbitration. *Williams*, 2024 WL 5186620, at *9 (quoting *Taylor v. Fannie Mae*, 839 F. Supp. 2d 259, 261 (D.D.C. 2012)). However, if there is "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability, an arbitrator will determine the arbitrability of a claim in a dispute. *Id.* (quoting *First Options of Chi., Inc.*, 514 U.S. at 944). "[C]lear and unmistakable evidence" that arbitrability is

delegated to an arbiter is determined by the agreement's "plain language." *Id.* An agreement delegates arbitrability to the arbitrator if it provides that the arbitration will be governed by the American Arbitration Association ("AAA") rules, since "the AAA rules give the arbitrator the power to rule on arbitrability of any claim or counterclaim." *Id.*; *see also Sakyi*, 308 F. Supp. 3d, at 378 ("[A]dopting the AAA rules makes the issue of arbitrability one for the arbitrator, not the court, to decide.")

Since it was determined that the parties had valid arbitration agreements between them, the Court will now determine if the parties agree to arbitrate arbitrability. They did. The Loan and Security Agreement states that "[a]ll disputes and determinations concerning the *arbitrability* of a claim (including disputes about the scope, applicability, enforceability revocability, unconscionability, or validity of the amendment or this section) shall be decided by the arbitrator." Consolidated Agreement at 29 (emphasis added). The plain language of this clause clearly and unmistakably shows that the parties agreed that the arbitrability of any claim will be decided by the arbiter—not the Court.[7] While the D.C. Warranty Agreement does not explicitly mention arbitrability, it does specify that "[t]he arbitration, including the selection of the arbitrator, will be administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules." Consolidated Agreement at 39. Since the AAA delegates arbitrability questions to the arbitrator, the Court cannot address arbitrability here. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses *no power* to decide the arbitrability issue." (emphasis added)). Accordingly, it will be up to the

---

[7] Furthermore, the arbitration clause also states "[t]he arbitration, including the selection of the arbitrator, will be administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules (the "Rules") by a single neutral arbiter." Consolidated Agreement at 29. Thus, the parties clearly agreed the AAA would choose the arbiter, not the Court.

11

arbitrator to determine in the first instance whether the Mr. Pearson's dispute is within the scope of the arbitration agreement.

When a court compels arbitration to determine the arbitrability of the claims before it, "it remains plausible that the Court may yet be required to consider some or all of the claims in this action on the merits." *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 146 (D.D.C. 2015). Therefore, the customary practice of courts in this district is to stay the proceedings rather than dismiss the claims outright. *See Moyler v. Securitas Servs. USA, Inc.*, No. 25-CV-00911 (CRC), 2025 WL 1684108, at *2 (D.D.C. June 16, 2025) (collecting cases). The Court will further order the parties to submit written status reports every thirty days from the date of the Order accompanying this Memorandum Opinion to update the Court on the progress of the arbitration proceedings.

## IV.    CONCLUSION

For the foregoing reasons, the Court will order that all claims against co-defendants Bradley Zayn, Greg Floyd, Oronde Wright, Pure Solar Systems, and Sustainable Energy Systems be dismissed for invalid service of process. It will further GRANT Sunnova's Motion to Dismiss Mrs. Pearson from the case, GRANT Sunnova's Motion to Compel, subject to possible re-opening. Finally, the Court will STAY the claims before it pending outcome of the arbitration and ORDER that the parties file a joint status report every thirty days from the date of its accompanying Order.

Date: 13 August 2025

Royce C. Lamberth
United States District Judge